UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Criminal No. 2:10-CR-00137

THOMAS A. ZAMOW,

    Defendant.

**DEFENDANT'S SENTENCING MEMORANDUM**

**COMES NOW** the Defendant, Thomas A. Zamow, by his counsel, Dwane L. Tinsley, and submits this Memorandum outlining the following 18 USC §3553(a) factors for the Court's consideration at his April 11, 2011, sentencing hearing.

Mr. Zamow's guidelines are calculated in the presentence report at total offense level of 15, criminal history category I, resulting in a guideline imprisonment range of 18 to 24 months. Mr. Zamow asserts that there are factors that warrant sentencing him to a sentence alternative to that suggested by U.S.S.G. § 5C1.1(d). Based upon those factors, set out below, Mr. Zamow asks that the Court sentence him to a term of three years probation with a special condition that six months be served on home confinement and he perform 180 days of community service.

**I.   FACTUAL BACKGROUND**

On May 14, 2010, Thomas A. Zamow signed a written plea agreement and consented to the filing of a one-count information to be filed in the United States District Court for the Southern District of West Virginia charging him with tax evasion in violation of 26 U.S.C.§ 7201.

On November 17, 2010, Thomas A. Zamow, appeared before this Honorable Court and entered a guilty plea to a one-count information charging him with tax evasion in violation of 26 U.S.C. Section 7201 in accordance with the written plea agreement. Mr. Zamow was then released on a $10,000.00 unsecured bond and placed under supervision of the United States Probation Office. He has been under supervision since his release and has remained in full compliance with the conditions of release. Mr. Zamow accepted responsibility for his conduct and cooperated fully with federal authorities. In addition, Mr. Zamow has been debriefed by federal authorities concerning a significant investigation that was on-going at the time and has assisted federal investigators in what is believed to be a current on-going investigation. Mr. Zamow readily offered his assistance when he was asked by federal investigators and is willing to continue if requested. He is awaiting sentencing which is currently scheduled for April 11, 2011.

**II.     GUIDELINES ANALYSIS**

The presentence report was report was prepared on February 28, 2011 and revised on March 25, 2011, indicating a base offense level of eighteen (18) pursuant to U.S.S.G. Section 2T4.1(G). Pursuant to the criteria set forth in U.S.S.G. Sections 3E1.1(a) and 3E1.1(b), Mr. Zamow's offense level was adjusted downward by three (3) levels. As a result, the adjusted total offense level has been calculated at a guideline level of fifteen (15). In sum, and pursuant to U.S.S.G. Chapter 5, Part A, based on a total offense level of fifteen (15) and a criminal history category of I, the guideline range for imprisonment is 18 to 24 months. Mr. Zamow has reviewed the presentence report and has filed four objections to minor factual matters, but agrees that the offense level has been properly calculated.

As of the date of this Sentencing Memorandum, the government has not filed any objections to the presentence report.  At the time of sentencing, Mr. Zamow, through counsel, will respectfully request this Honorable Court to impose a sentence below this guideline range, which is now advisory, based on a number of mitigation factors indicated in this memorandum.

### III.     PERSONAL BACKGROUND

Thomas A. Zamow, the youngest of four children of Frederick and Hazel Zamow, was born on February 3, 1953, in Holden, Logan County, West Virginia.  Both of his parents and two of his siblings are deceased.  His surviving brother, who was adopted as an infant, lives in California.  His mother died when he was nine years old and because of his father's employment as a coal miner, he was raised by his paternal grandmother who lived in the home.  He would not see his father until the weekends.  Although he and his father were able to spend time together on the weekends, because of lack of transportation, their time was mainly spent at home.  In addition, his father had a drinking problem which affected their time together.

On August 19, 1978, Mr. Zamow married Vivian Rose Watkins and have two children, Karen N. Zamow, age 29, and Thomas D. Zamow, age 26.  This is his only marriage and he does not have any other children.  Although his marriage has been strained since this ordeal, the current state of the marriage is very stable.

Thomas A. Zamow graduated from Logan High School in May, 1971 and enrolled at West Virginia University in August, 1971.  He received a Bachelor of Science Degree in Business Administration from West Virginia University in May, 1975 and his Doctor of Jurisprudence Degree from the College of Law at West Virginia University in May, 1978.  After graduating from law school, Mr. Zamow returned to Logan County and opened a solo law practice concentrating primarily on real estate matters.  In addition to his private practice, he

worked as an Assistant Prosecuting Attorney for Logan County from 1978 until 1996 and again from 2004 until 2008. He also worked as a member of the West Virginia Workers' Compensation Appeals Board from 2001 until 2004.

Because of the expertise Mr. Zamow established in real estate matters, this work took him to several counties in southern West Virginia, namely, Boone, Lincoln, Logan, McDowell, Mingo and Wyoming. As a result, he spent a considerable amount of time in the record rooms in these various counties. He also performed loan closings that took him away from his office. This has been his schedule for thirty-three years and exemplifies his dedication and commitment to his clients and his profession while neglecting the administrative duties of his office which led to his legal problems. The failures in his office were two-fold: first, he did not have a working system of checks and balances and second, he did not have a system whereby the income was recorded at the end of the year. However, this does not excuse his conduct, which he accepts responsibility and is truly remorseful.

Since his return home after law school, Mr. Zamow has served his community in a number of different ways and venues. He has participated in annual summer camps for children, annual Christmas programs for children, coached Little League and other sports, raised money for various youth activities, served on various Boards and assisted many organizations. Prior to his current legal problems, Mr. Zamow has never been charged or involved in any criminal activity. He is well-regarded and respected in the community. Since the onset of this investigation and his current legal predicament, Mr. Zamow has exhibited remorse for his mistake that brings him before this Honorable Court.

### IV. THOMAS A. ZAMOW'S CHARACTER

The letters in support of Mr. Zamow that have been provided to the Court are insightful and describe what he means to them. They illustrate that Mr. Zamow's character is one of hard work, commitment, caring and concern for the community. Although he achieved success professionally, he did not forget where he came from or his friends, always willing to give back. As Joseph Raymond stated in his support letter, "If you need to get something done, Tom is one of the people that you call." The letters further illustrate that Mr. Zamow's character is such that a sentencing departure and/or variance would be appropriate. Upon reviewing the letters in totality, they paint a picture of an individual who has spent a large portion of his personal and professional life helping his friends and neighbors, serving the needs of his community and giving of himself whenever needed.

### V. AUTHORITY TO SENTENCE OUTSIDE THE GUIDELINE RANGE

The United States Sentencing Commission (the Commission) and the United States District Court Judge have unique capabilities, perspectives and roles in the sentencing process. The Commission is charged by Congress and has the recognized ability to "base its determinations or empirical data and national experience, guided by a professional staff with appropriate expertise," Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 574 (2007) (internal citation omitted). For this reason, the guidelines are the "starting point and the initial benchmark," Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596 (2007).

The District Court has the micro-level view of the particular person before the Court and his particularized characteristics. In arriving at the appropriate sentence, the U.S. Supreme Court has explicitly recognized that a district court could be required to impose a sentence outside of

the macro-level advisory guideline range in particular cases that sentence is entitled to great deference:

> In light of these discrete institutional strengths, <u>a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case "outside the 'heartland' to which the Commission intends individual Guidelines to apply."</u> <u>Rita</u>, 551 U.S., at ___ , 127 S.Ct. at 2465. On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range "fails properly to reflect Section 3553(a) considerations" even in a mine-run case [internal citations omitted].

<u>Kimbrough</u> at 574-575 (emphasis added).

## VI. <u>SENTENCING FACTORS TO CONSIDER</u>

The Supreme Court examined the constitutionally of the Federal Sentencing Act, specifically 18 U.S.C. Sections 3553 and 3742. <u>United States v. Booker</u>, 543 U.S. 220 (2005). Holding that the mandatory nature of the Guidelines violated the Sixth Amendment, the Court severed and excised subsection (b)(1) of 18 U.S.C. Section 3553, as well as subsection (e) of 18 U.S.C. Section 3742. Id. at 245-46. The Court held that any sentence imposed is reviewed for "reasonableness." The <u>Booker</u> decision "makes the Guidelines effectively advisory. According, a sentencing court is required to consider Guideline ranges, see 18 U.S.C.A. Section 3553(a)(4)(Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see Section 3553(a) (Supp.2004), Id. The seven concerns cited by the Court include:

(1) the nature and circumstance of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

6

      (B)   to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for –

      (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; or

      (B)   in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of Title 28, United States Code, taking into account any amendments made to such guidelines or Policy statement by act of Congress (regardless of whether such Amendments have yet to be incorporated by the Sentencing Commission into amendments issued under Section 994(p) of Title 28;

(5)  any pertinent policy statement;

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(7)  the need to provide restitution to any victims of the offense.

Id. at 268-70, citing 18 U.S.C.A. Section 3553(a).

      When the Court in Booker held that the Federal Sentencing Guidelines are merely "advisory," it reaffirmed a court's ability to depart from the applicable guideline range. In United States v. McBride, the U.S. Court of Appeals in the Sixth Circuit explained that "while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant." 434 F. 3d 470, 475 (6th Cir. 2006). When considering a departure, the court must take into consideration all information about the

defendant as directed by Section 3661, as well as the seven statutory factors of Section 3553(a), keeping in mind that the sentence will be reviewed for its "reasonableness."

Furthermore, after the Booker decision, "many of the very factors that used to be grounds for downward departure under the Guidelines are now considered by the district court—with greater latitude—under section 3553(a)." McBride, 434 F.3d, at 476 (emphasis added). In fact, the Sixth Circuit points out "that there is not complete agreement among the courts over whether the Guideline-based 'departures' truly even exist at this point." Id. at 477. "The assertion that departures are obsolete has an element of truth---for there is now no mandatory guideline range from which to depart----and does properly shift the focus of our review to reasonableness." Id.

A district court in the post-Booker era is "bound by the mandate in Section 3553(a) in determining the appropriate sentence for a defendant." Vonner, __ F.3d __, 2006 WL 1770095 at *4. Included in this mandate is the instruction that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in the provision. Section 3553(a) (emphasis added). Even before Booker, the Supreme Court indicated that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

As articulated by the Fourth Circuit in the case of U.S. v. Moreland, 437 F.3d 424 (4th Cir. 1996):

> Thus, in imposing a sentence after Booker the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. See United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). Next, the court must "determine whether a sentence within that range…serves the factors set forth in Section

3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." United States v. Green, 436 F.3d 449, 455 (4th Cir. 2006). In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. If an appropriate basis for departure exits, the district court may depart. If the resulting departure range still does not serve the factors set forth in Section 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence").

In the instant case, there are mitigating factors that suggest it is not only more reasonable, but also more just for the sentencing court to depart below the applicable guideline range and to fully consider alternative sentencing possibilities. The bases for a downward departure from the Federal Sentencing Guidelines and other mitigating factors which must be considered under Section 3553(a) include:

- A. U.S.S.G. Section 3E1.1  Acceptance of Responsibility

    1. Pursuant to USSG Section 3E1.1(a):

        a. Mr. Zamow admitted to the conduct charged and clearly demonstrated an acceptance of responsibility for his actions relative to the offense charged.

        b. Mr. Zamow has abided by all terms and conditions of his bond.

    2. Pursuant to USSG Section 3E1.1(b):

        a. Mr. Zamow notified the United States Attorney's Office of his intention to enter a guilty plea in a timely manner.

        b. Mr. Zamow's timely notification of his intent to enter a plea allowed the government to avoid the time and financial expenses that could have been incurred for trial preparation.

- B. The Nature and Circumstances of the Offense

    1. The offense in the instant case is a non-violent offense and will not compromise his ability to be a useful and productive member of society. Mr. Zamow is not a violent person and does not present any danger to the public.

    2. This offense has caused considerable devastation to Mr. Zamow's personal life, most significantly, the disappointment he has caused his

family. It has caused him extreme embarrassment with his friends, family and colleagues.

C. The History and Characteristics of the Defendant

Defendant's History

1. Mr. Zamow is fifty-eight (58) years of age and presents an extremely low risk of committing any other crime, especially given his complete lack of a prior criminal record.

2. Mr. Zamow's actions which led to the present charge are out-of-character conduct and not consistent with the character that he has exhibited throughout his life. Prior to this charge, Mr. Zamow had an impeccable reputation in his community which has now been tarnished.

Defendant's Characteristics

1. Mr. Zamow has spent most of his profession career providing support and assistance to the youth, serving the needs of the community, especially by providing free legal advice to individuals and various organizations. He has donated countless hours and expended his own money on many different projects and activities in his community.

2. Mr. Zamow has always been there when his friends were having personal problems, i.e. health issues, legal issues, etc.

D. The Need for the Sentence Imposed

1. Mr. Zamow's offense is less likely to be deterred by a prison sentence than it already has been deterred by the loss of his professional reputation as an attorney, the loss of his social status in the communities that he works and lives, the loss of his status as a role model to the youth and the embarrassment and humiliation felt by Mr. Zamow and his family. The government's goal of criminal deterrence would not be furthered by incarceration.

2. As a result of his conviction, Mr. Zamow will lose his license to practice law. A license to practice law is a valuable right and because of his conduct, all that he has worked so hard to attain, will be taken away from him. As opposed to incarceration, Mr. Zamow has the skill and ability to use his legal talent by providing free legal services to low-income individuals and underserved individuals in southern West Virginia.

3. To further explain the need for legal services in southern West Virginia, Robert Kuenzel, an attorney in Chapmanville, West Virginia, will offer

10

>testimony, if needed, in support of the role Mr. Zamow could play in providing a service to a community in need.

## VII. SENTENCE PROPOSED

Mr. Zamow urges this Court to find that a sentence outside the advisory guideline range is appropriate and will be sufficient. We respectfully request the Court to impose a non-incarcerated sentence as an alternative to the advisory guideline range. Mr. Zamow is an excellent candidate for an alternative sentence. A guideline sentence of incarceration is not necessary for Mr. Zamow and an alternative sentence would accomplish the statutory purposes of sentencing.

We respectfully request the Court to impose a sentence of three years probation with a special condition of six months home confinement and 180 days of community service as an alternative sentence to the advisory guideline range. Such a sentence reflects the seriousness of Mr. Zamow's conduct, promotes respect for the law by Mr. Zamow and the community and provides just punishment. 18 USA Section 3553(a)(2)(A).

Wherefore, the Defendant, Thomas A. Zamow, based on the foregoing reasons, respectfully request this Court to impose a reduction in sentence or alternative sentencing as suggested in this Memorandum. When considering the various options that are available to this Court, the circumstances of this case and the benefit Mr. Zamow can provide to the community as opposed to incarceration, some form of alternative sentence is appropriate in this case.

Respectfully submitted,

THOMAS A. ZAMOW,

By Counsel,

/s/ Dwane L. Tinsley, Esquire
West Virginia State Bar #3767
**Eckert Seamans Cherin & Mellott, PLLC**
214 Capitol Street
Charleston, West Virginia 25301
Phone: (304) 346-5500
Telefax: (304) 346-5515
dtinsley@eckertseamans.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Criminal No. 2:10-CR-00137

THOMAS A. ZAMOW,

    Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2011, I served the foregoing **Defendant's Sentencing Memorandum** with the Court using CM/ECF which will automatically serve all electronic filers.

                                Shawn A. Morgan
                                Assistant United States Attorney
                                United States Attorney
                                Southern District of West Virginia
                                Robert C. Byrd United States Courthouse
                                300 Virginia Street, East, Suite 4000
                                Charleston, West Virginia  25301
                                Shawn.Morgan@usdoj.gov

                                         /s/ Dwane L. Tinsley, Esquire
                                         West Virginia State Bar #3767
                                         **Eckert Seamans Cherin & Mellott, PLLC**
                                         214 Capitol Street
                                         Charleston, West Virginia  25301
                                         Phone:  (304) 346-5500
                                         Fax:  (304) 346-5515
                                         dtinsley@eckertseamans.com